UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
VINCENT MASINO, KEITH LOSCALZO,
FRANCISCO FERNANDEZ, PHILIP A. FAICCO,
and JAMES KILKENNY, as Trustees and Fiduciaries
of the PAVERS AND ROAD BUILDERS DISTRICT
COUNCIL WELFARE, PENSION, ANNUITY AND **MEMORANDUM AND ORDER**
APPRENTICESHIP, SKILL IMPROVEMENT AND
TRAINING FUNDS, 10-CV-1629 (SLT)(SMG)
                                  Plaintiffs,

        -against-

INTEGRATED STRUCTURES CORP.,

                                  Defendants.
------------------------------------------------------------------------x

**TOWNES, United States District Judge:**

       Plaintiffs, the Trustees of the Pavers and Road Builders District Council Welfare, Pension, Annuity and Apprenticeship, Skill Improvement and Training Funds (collectively, the "Funds"), bring this action against defendant Integrated Structures Corp. ("Defendant"), seeking to recover $27,275.27 in delinquent contributions, plus $940.43 for previous late payments of contributions, owed to the Funds pursuant to a collective bargaining agreement. Defendant did not answer or otherwise respond to Plaintiffs' complaint and Plaintiffs now move for a default judgment. For the reasons stated below, Plaintiffs' motion for a default judgment is granted to the extent of awarding Plaintiff $27,242.27 for contributions owed for 2009, plus pre-judgment interest on this amount at the rate of 10% per annum; liquidated damages in the amount of $2,724.23; $940.43 in interest owed on late contributions paid prior to 2009; $1.072.00 in attorneys' fees and $350 in costs. However, unless Plaintiffs request otherwise, this Court will delay entering final judgment in this matter for thirty (30) days to permit Plaintiffs the opportunity to provide supplemental briefing with respect to the issue of whether the plan provided for liquidated damages of 20% at the times relevant to this action.

**BACKGROUND**

*The Collective Bargaining Agreement*

Defendant, a New York corporation, is a signatory to a collective bargaining agreement ("CBA") with the Highway, Road and Street Construction Laborers Local Union 1010 of the District Council of Pavers and Road Builders of the Laborers' International Union of North America, AFL-CIO (the "Union"). *See* Declaration of Charles R. Virginia in Support of Motion for Default Judgment, dated June 4, 2010, Ex. A. The CBA specifies the hourly wage that Defendant must pay the various classifications of covered employees, as well as the "Fringe Benefit" contributions that Defendant must pay the Funds for each hour worked by a covered employee.[1] For example, the CBA specifies that "laborers" are to be paid an hourly wage of $32.84, and "Fringe Benefits" totaling $21.05. *Id.*, Art. VII, §8(2). The CBA further provides how the "Fringe Benefit" payment are to be allocated:

| | |
|---|---|
| Welfare Fund: | $9.15 |
| Pension Fund: | $6.85 |
| Annuity Fund: | $4.00 |
| Training Fund:[2] | $0.90 |
| LECET:[3] | $0.10 |
| NYS Safety & Health: | $0.05 |
| Total Fringes: | $21.05 |

---

[1] The contributions to the Welfare< Training and Pensions Funds are calculated based on the actual hours worked, "not on the premium portion of the time and one-half rate or the double-time rate." CBA, Art. IX, § 1(a). The Annuity Fund contributions are "paid for all hours at the straight time, or time and one-half, or double time rate." *Id.*

[2] The term "Training Fund" is previously defined in Art. IX, § 1(a), of the CBA as meaning the "Pavers and Road Builders District Council Apprenticeship, Skill Improvement and Training Fund."

[3] "LECET" – the Laborers-Employees Cooperative and Education Trust – is similar to a trade organization and works on issue of importance to the construction industry. *See* http://www.lecet.org/Information/general_information.htm. Under the terms of the CBA, both Defendant and the Union agree to participate in the New York State Laborers-Employees Cooperative and Education Trust. CBA, Art. XIII.

*Id.*, Art. IX, § 1(a). However, the amounts set forth above relate only to the first year of the contract. With respect to the remaining six years, the CBA states:

> Effective on July 1, 2006, July 1, 2007 and July 1, 2008, the base rate of Wages plus Fringe Benefits for each classification set forth above shall be increased by 5%, with the amount of the increase allocated by the Union between Wages and Fringe Benefits in its sole and absolute discretion. Effective July 1, 2009 and July 1, 2010, the base rate of Wages plus Fringe Benefits for each classification set forth above shall be increased by 5.25%, with the amount of the increase allocated by the Union between Wages and Fringe Benefits in its sole and absolute discretion. Effective July 1, 2011, the base rate of Wages plus Fringe Benefits for each classification set forth above shall be increased by 5.5%, with the amount of the increase allocated by the Union between Wages and Fringe Benefits in its sole and absolute discretion.

*Id.*, Art. VII, §8(2). The CBA also requires Defendant to pay "Supplemental Training Fund Contributions" of 60 cents per hour worked in the year beginning July 1, 2005; 65 cents per hour in the year beginning July 1, 2006, and 70 cents per hour beginning in July 1, 2007. *Id.*, Art. XV.

In order to permit the Funds to calculate the required contributions, the CBA provides that Defendant must submit monthly reports ("Employer Reports"). These Employer Reports are to contain "each employee's name, social security number, hours worked and job locations and such other information as may be required by the Funds." *Id.*, Art. IX, § 1 (b) and (c). The CBA further provides that if Defendant fails to pay its contributions "when due":

> [Defendant] shall pay, in addition to the amounts due and unpaid:
>
> (a) annual interest at the rate of 10% per annum;
>
> (b) costs and attorneys' fees;
>
> (c) liquidated damages in the amount of ten percent (10%);

>   (d) audit costs and all amounts, fees, costs, penalties and disbursements provided by statute or regulation, including but not limited to the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

*Id.*, Art. IX, § 5.

*This Action and Plaintiffs' Motion*

In April 2010, Plaintiffs commenced this ERISA action, principally alleging that Defendant had not paid $27,275.27 in contributions owed to the Funds for the period from January to December 2009. Plaintiffs sought to recover not only this amount, but "interest on the amount of unpaid Fringe Benefits at an annual rate of 10%, liquidated damages in the amount of 20% of the amount adjudged to be due and owing, [and] attorney's fees . . . ." Complaint at ¶ 19. In addition, Plaintiffs sought to recover an additional $940.43 in interest, allegedly owed on contributions that were made prior to January 2009, but were made late. *Id.*

Defendant was served through the New York Secretary of State on April 20, 2010. See Affidavit of Service of Mary M. Bonville, dated Apr. 20, 2010. However, Defendant failed to answer or otherwise respond. Plaintiffs now move for a default judgment, seeking to recover the amounts set forth in the complaint.

In support of their motion, Plaintiffs originally submitted a four-page declaration, signed by Plaintiffs' counsel, which noted, *inter alia*, that

>   Section 502(g) of ERISA [codified at 29 U.S.C. § 1132(g)] provides that upon a finding of an employer violation of Section 515 of ERISA, the Court shall award to the plaintiff its unpaid fringe benefit contributions, interest on the unpaid contributions, liquidated damages, attorneys' fees, and costs and disbursements incurred in the action.

Declaration of Charles R. Virginia in Support of Motion for Default Judgment, dated June 4, 2010, at ¶ 5. However, the only documents attached to this declaration – aside from a "Request for Default Entry" and a proposed Certificate of Default – were a copy of the CBA and the attorney's contemporaneous time records.

On June 22, 2010, this Court referred Plaintiffs' motion to Chief Magistrate Judge Gold for a report and recommendation. He promptly issued an order directing Plaintiffs to submit "[r]emittance forms or other records maintained by plaintiffs documenting the $27,275.75 in unpaid contributions for 2009," and any "additional submission in support of the damages they seek" by July 15, 2010. *See* Order of Judge Gold dated June 24, 2010, at 1.

In response to this order, Plaintiffs' counsel filed a second declaration, dated July 15, 2010 (the "Second Declaration"). Attached to this declaration were Defendant's Employer Reports for each month of 2009, and a spread sheet dated July 15, 2009, reflecting amounts that appear in the Employer Reports However, according to the amounts set forth on the spread sheet, the total amount due the Funds for 2009 was $26,678.28 – not $27,275.27. Because of minor errors in entering numbers on the spread sheet, the total amount reflected in the Employer Reports was slightly lower: $26,645.25.[4]

The Second Declaration requested liquidated damages of 20% of the $27,275.27; interest on late pre-2009 contributions in the amount of $940.43; and attorneys' fees and costs in the amount of $1,506.41. However, Plaintiffs provided no documentation relating to the $940.43

---

[4]The Employer Report for the period ending on July 4, 2009, indicates that Defendant owes the Funds $862.15, but the spread sheet states that Defendant owes $895.16. The spread sheet entries for the periods ending August 29, 2010, and November 28, 2009, are both one cent greater than what appears on the Employer Reports.

interest or the liquidated damages, aside from provisions in the CBA which provided for liquidated damages of 10%. In addition, the documentation which Plaintiffs provided in connection with the costs requested total of $84.41 for "MT."

On October 22, 2010, this Court vacated the referral order dated June 22, 2010, for reasons which need not be discussed herein. On December 20, 2010, this Court held oral argument on Plaintiffs' motion. At that proceeding, this Court raised the issues regarding the spread sheet, the costs and the liquidated damages. Plaintiffs' counsel responded by providing a second spread sheet and requesting that the Court discount the request for the $84.41 in costs. Plaintiffs' counsel also agreed to provide documentation relating to the liquidated damages.

## *DISCUSSION*

"Where, as here, 'the court determines that [a] defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Chen v. Jenna Lane, Inc.*, 30 F. Supp. 2d 622, 623 (S.D.N.Y. 1998) (quoting 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2688, at 58-59 (3d ed. 1998)). Accordingly, while Defendant's default is sufficient to establish that Defendant failed to make required contributions to the Funds, the precise amount of those contributions must be determined by the Court. In addition, the Court must determine the attorneys' fees and costs that may be recovered.

### *Amount of Contributions and Interest*

The spread sheet which Plaintiff's counsel provided at oral argument differs from the original spread sheet in one notable respect. All figures reported for the "Training Fund" on the second spread sheet are three times higher than they were on the first sheet and on the Employer

Reports. The Employer Reports calculated the "Training Fund" figures by multiplying the hours worked by 30 cents. However, the numbers set forth in the second spread sheet are apparently calculated by multiplying the hours worked by 90 cents.

There is no evidence to indicate why this change was made. However, this Court notes that the CBA provides for a rate of 90 cents per hour for laborers. Art. IX, § 1(a). Although Article VII, § 8(c) provides for periodic increases in the total wages and Fringe Benefit packages for laborers, this section also provides that only "the amount of the *increase* [was to be] allocated by the Union between Wages and Fringe Benefits in its sole and absolute discretion." *Id.* (emphasis added). Plaintiff has provided no evidence regarding how the increases were allocated, but this Court assumes that the "Training Fund" allocation did not decrease. Accordingly, this Court assumes that those portions of the Employer Reports which directed employers to pay 30 cents per hour worked, and which calculated Training Fund contributions based on the 30 cent rate, were erroneous.

While this Court will accept the "Training Fund" figures on the second spread sheet as correct, it notes that the spread sheet continues to report totals for the month ending July 4, 2009, that are $33 higher than those reported on the Employer Report for that month, even when the Training Fund figures are adjusted. Since there is no explanation for this discrepancy, this Court will reduce the contributions owed for 2009 by $33.00, from $27,275.27 to $27,242.27.

This Court is satisfied by the documentation provided by Plaintiffs in connection with the request for $940.43 in interest owed on late contribution paid prior to 2009. Accordingly, this Court will award Plaintiffs the $940.43 that they request.

*Liquidated Damages*

In response to this Court's inquiries regarding liquidated damages, Plaintiffs's counsel has provided this Court with the Funds' "Policy for Collection of Delinquent Fringe Benefit Contributions." *See* Letter to Hon. Sandra L. Townes from Judy Wong, Esq., dated Jan. 10, 2011. That "Policy", which appears to be signed by the Funds' trustees, states, *inter alia*:

> Employers shall be liable for the payment of delinquent Contributions with interest at the rate of ten percent (10%) per annum (calculated from the Due Date), plus liquidated damages of twenty percent (20%) of the amount of delinquent Contributions owing . . . .

*Id*. at Art II. However, it is unclear precisely when this Policy, which appears to be dated September 2, 2009, became effective and whether this Policy had the effect of modifying the Plan. Plaintiffs' counsel's cover letter, attaching a copy of the Policy, does not clarify matters.

Title 29, section 1132(g)(2) of the United States Code provides that:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan–
>
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of--
>     (i) interest on the unpaid contributions, or
>     (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

However, § 1132(g)(2)(C)(ii) "applies when (1) the fiduciary obtains a judgment in favor of the plan, (2) unpaid contributions exist at the time of suit, and (3) the plan provides for liquidated damages." *Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mechanical Contractors, Inc.*, 875 F.2d 212, 215 (9th Cir. 1989) (cited with approval in *Iron Workers District Council of Western New York & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc*., 68 F.3d 1502, 1506 (2d Cir. 1995)) (emphasis in *Idaho Plumbers* omitted). Here, the evidence adduced by Plaintiffs is insufficient to establish that the plan provided for liquidated damages of 20% throughout 2009.

This Court will permit recovery of liquidated damages in the amount of 10%, since the CBA clearly permits this. *See* CBA, Art. IX, § 5. However, this Court will delay entering final judgment in this matter for thirty (30) days, to permit Plaintiffs the opportunity to provide supplemental briefing with respect to this issue.

### *Attorneys' Fees and Costs*

This Court has reviewed Plaintiffs' counsel's contemporaneous time records and the qualifications of the individual attorneys who represented Plaintiffs in this action. This Court is satisfied that the rates and time requests are reasonable. However, in light of the failure to provide any explanation for the $84.41 attributed to "MT," this Court will reduce the costs from the $434.41 requested to $350.00.

### *CONCLUSION*

For the reasons set forth above, Plaintiffs' motion for a default judgment is granted to the extent of awarding Plaintiff $27,242.27 for contributions owed for 2009, plus pre-judgment interest on this amount at the rate of 10% per annum; liquidated damages in the amount of

9

$2,724.23; $940.43 in interest owed on late contributions paid prior to 2009; $1,072.00 in attorneys' fees and $350 in costs. However, unless Plaintiffs request otherwise, this Court will delay entering final judgment in this matter for thirty (30) days, to permit Plaintiffs the opportunity to provide supplemental briefing with respect to the issue of whether the plan provided for liquidated damages of 20% at the times relevant to this action.

**SO ORDERED.**

/s/
SANDRA L. TOWNES
United States District Judge

Dated: March 30, 2011
      Brooklyn, New York